

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Virginia**

DARRELL D. CHAMBLEE,

    Plaintiff,

v.                     Civil Action No. 3:13cv820

OLD DOMINION SECURITY
COMPANY, L.L.C., <u>et al.</u>,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT OLD DOMINION SECURITY COMPANY, L.L.C.'S MOTION TO DISMISS COMPLAINT FILED BY DARRELL D. CHAMBLEE (Docket No. 3); DEFENDANT CHAD ELLIS' MOTION TO DISMISS COMPLAINT FILED BY DARRELL D. CHAMBLEE (Docket No. 6); DEFENDANT TROY GRAY'S MOTION TO DISMISS THE COMPLAINT FILED BY DARRELL D. CHAMBLEE (Docket No. 8); DEFENDANT OLD DOMINION SECURITY COMPANY, L.L.C. AND CHAD ELLIS' MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AS UNTIMELY (Docket No. 12); DEFENDANT TROY GRAY'S MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AS UNTIMELY (Docket No. 14); and PLAINTIFF'S MOTION TO ENLARGE TIME TO RESPOND TO DEFENDANTS' OLD DOMINION SECURITY COMPANY L.L.C.'S, ELLIS & GRAY'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT (Docket No. 18). For the reasons set forth below, DEFENDANT OLD DOMINION SECURITY COMPANY, L.L.C.

AND CHAD ELLIS' MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AS UNTIMELY (Docket No. 12) and DEFENDANT TROY GRAY'S MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AS UNTIMELY (Docket No. 14) will be denied; PLAINTIFF'S MOTION TO ENLARGE TIME TO RESPOND TO DEFENDANTS' OLD DOMINION SECURITY COMPANY L.L.C.'S, ELLIS & GRAY'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT (Docket No. 18) will be granted; DEFENDANT CHAD ELLIS' MOTION TO DISMISS COMPLAINT FILED BY DARRELL D. CHAMBLEE (Docket No. 6) and DEFENDANT TROY GRAY'S MOTION TO DISMISS COMPLAINT FILED BY DARRELL D. CHAMBLEE (Docket No. 8) will be granted; and DEFENDANT OLD DOMINION SECURITY COMPANY, L.L.C'S MOTION TO DISMISS COMPLAINT FILED BY DARRELL D. CHAMBLEE (Docket No. 3) will be granted in part and denied in part.

## FACTUAL BACKGROUND

Darrell D. Chamblee ("Chamblee"), originally filed his Complaint in the Circuit Court for the City of Richmond. Upon removing the case to the Eastern District of Virginia, the defendants, Old Dominion Security Company, L.L.C. ("ODS"), Chad Ellis ("Ellis"), and Troy Gray ("Gray"), filed motions to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6). For purposes of deciding a motion to dismiss under Rule 12(b)(6), a court must accept the facts alleged in the complaint as true and construe them in favor of the plaintiff. 5B Charles A. Wright &

Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1357 (3d ed. 1998).
Therefore, the facts will be recited mindful of that precept.

From January 2008 until May 24, 2011, Chamblee, an African-
American, was employed as a Security Officer with ODS. During
that period, Chamblee worked at the Mary Washington Hospital in
Fredericksburg, Virginia. Chamblee received "regular promotions"
and achieved the rank of lieutenant.

On March 28, 2011, ODS announced "various management
structural promotions and changes" at the Mary Washington
Hospital even though it had not posted any promotion or job
opportunities. Chamblee complained to Gray, the Vice-President
of ODS, that he had not been given the opportunity to apply for
the position of captain and also that he had been passed over
when a white female, Officer Ferrell, was promoted. Chamblee
previously had complained to Gray about racial tensions between
himself and Ferrell, but Gray did not investigate those
complaints. On March 31, 2011, Chamblee and Gray met to discuss
these matters, but Gray did not initiate an investigation into
either of them. On April 6, 2011, Chamblee filed his first
charge with the Equal Employment Opportunity Commission ("EEOC")
alleging race and gender discrimination.

On May 23, 2011, Chamblee participated in an ODS training
session. During the course of that training session, an incident
was reported at "2300 Fall Hill." Chamblee did not respond to

3

the report of the incident because that site did not lie within "Chamblee's administrative or operational control" during the training session. On May 24, 2011, Ellis called Chamblee to his office to discuss Chamblee's failure to respond to the report. During that meeting, Ellis terminated Chamblee's employment with ODS. Chamblee alleges that Ferrell (who is not a party to this action) provided false information about the incident that led to his termination.

On June 8, 2011, Chamblee filed a second complaint with the EEOC alleging retaliatory termination in addition to gender and race discrimination. After filing for unemployment compensation, Chamblee was rehired by ODS, but in a new position forty-seven miles away from the Mary Washington Hospital, without supervisory responsibilities, and as a "new hire." He voluntarily terminated his employment with ODS in September 2011.

## PROCEDURAL BACKGROUND

Chamblee filed this action in the Circuit Court for the City of Richmond on November 15, 2013. Thereafter, the Defendants timely removed it to this Court. On December 17, 2013, ODS and Ellis filed motions to dismiss, and Gray filed his motion to dismiss on December 18, 2013. The filing of those motions triggered Local Rule 7(F), which requires the opposing

party to file responsive briefs and supporting documentation
within eleven days of service. E.D. Va. Local Civ. R. 7(F)(1).
For documents filed in the Electronic Case Filing system,
parties receive three additional days to file responsive briefs.
Fed. R. Civ. P. 6(d) & 5(d)(3); E.D. Va. ECF Policies &
Procedures, at 33. Therefore, Chamblee had fourteen days to file
his brief in opposition to the motions. Because the fourteenth
day was New Year's Day, his brief was due to the Court on
January 2, 2014. See Fed. R. Civ. P. 6(a)(1)(C).

Chamblee did not file his memorandum in opposition until
January 7, 2014, five days after the due date. PLAINTIFF'S
MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTIONS TO
DISMISS (Docket No. 8). Subsequently, all three defendants moved
to strike the opposition as untimely.

**DISCUSSION**

**1.  Plaintiff's Motion to Enlarge Time Under Rule 6(b)**

Rule 6(b) provides two avenues for a party to take when it
needs an extension: (1) move for an extension before the
expiration of the deadline; or (2) thereafter, move for an
extension for "excusable neglect." Fed. R. Civ. P. 6(b)(1).
Chamblee did not move the Court for an extension before January
2, 2014, therefore, he must show good cause and "excusable
neglect." See Eagle Fire, Inc. v. Eagle Integrated Controls,

5

Inc., 2006 WL 1720681, *3 (E.D. Va. 2006). To that end, after the Defendants filed their Motions to Strike, Chamblee moved for an enlargement of time for response. The Local Rules of the Eastern District of Virginia state that requests for an extension will "in general, be looked upon with disfavor." E.D. Va. Local Civ. R. 7(I). However, Rule 6(b) "gives the court extensive flexibility to modify the fixed time periods found throughout the rules, whether the enlargement is sought before or after the actual termination of the allotted time." 4B Wright & Miller, supra, at § 1165.

In Pioneer Ins. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, the Supreme Court listed four factors that courts should consider when determining whether to grant relief under the ambit of "excusable neglect." The factors are: (1) the danger of prejudice to the adverse party; (2) the length of the delay; (3) whether the delay was within the reasonable control of the movant; and (4) whether the movant acted in good faith. Pioneer, 507 U.S. at 395. While "ignorance of the rules or mistakes construing the rules do not usually constitute 'excusable' neglect," the concept is not strictly limited to omissions caused by circumstances outside the movant's control. Id. at 392; see also Eagle Fire, 2006 WL 1720681, *4.

Here, Chamblee acknowledged that the omission stemmed from a mistake construing the applicable rules. (Plaintiff's Motion

to Enlarge Time, at 1). He argues that granting the extension will not prejudice the Defendants and that the delay was not occasioned by "bad faith."

While the delay was within the reasonable control of Chamblee, the Court notes that, once he became aware of the error, he has acted promptly. Indeed, he filed his Motion to Enlarge Time within two days of the Defendants' Motions to Strike, and he filed a PLAINTIFF'S REBUTTAL TO DEFENDANTS' OPPOSITION TO ENLARGE TIME (Docket No. 21) within a day of DEFENDANT TROY GRAY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO ENLARGE TIME (Docket No. 20). See Gilyard v. Northlake Foods, Inc., 367 F. Supp. 2d 1008, 1010-11 (E.D. Va. 2005) (noting that the party moving for an extension acted promptly after recognizing the delay and distinguishing a three-day delay from a fourteen-day delay). Ultimately, Chamblee's Opposition to Defendants' Motions to Dismiss was only five days late. The delay was minimal and did not affect the proceedings. See id.; see also Lee v. Amerisit Assisted Living, 2006 WL 1701341, at *1-2 (W.D. Va. 2006) (noting the minimal impact on judicial proceedings). Moreover, the evidence does not suggest that Chamblee was engaged in purposefully dilatory tactics. To deny Chamblee's motion under these circumstances would "divorce 'excusable' from 'neglect.'" Gilyard, 367 F. Supp. 2d at 1011.

7

The Defendants argue that the decision in Eagle Fire controls and requires the denial of Chamblee's motion. However, the facts here are quite different than those in Eagle Fire, wherein the Court declined to grant an extension to a party who had deliberately engaged in a pattern of dilatory behavior. Eagle Fire, 2006 WL 1720681, *4 ("Eagle Integrated made a deliberate decision not to focus on this matter after it was served with process. Indeed, it did not file a timely answer because it disagreed with the assertions in the Complaint."). That did not happen here.

The Defendants also invoke M. Shanken Comm'n, Inc. v. Variant Events, LLC, wherein the plaintiff filed its brief in opposition to the defendant's motion to dismiss seven days after the deadline established by the Local Rules. 2011 WL 2078007, at *7. However in Variant Events, the plaintiff did not file a motion to enlarge time before or *after* the deadline, thereby exhibiting a deliberate disregard for the deadline and an utter lack of diligence. Again, that is not what happened here.

For the foregoing reasons, PLAINTIFF'S MOTION TO ENLARGE TIME TO RESPOND TO DEFENDANTS' OLD DOMINION SECURITY COMPANY L.L.C.'S, ELLIS & GRAY'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT (Docket No. 18) will be granted.

## 2. Defendants' Motion to Dismiss Under Rule 12(b)(6)

ODS seeks dismissal of the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action (hereinafter the "Causes of Action" will be referred to as "Counts" followed by a Roman numeral). Thus, OD seeks dismissal of Counts I and II and IV through X. Ellis seeks dismissal of Counts IX and X, the only claims asserted against him. Gray seeks dismissal of Counts VII, IX, and X, the only claims asserted against him. Each count will be discussed in turn.

### (a) Standard of Review

To overcome a Rule 12(b)(6) motion to dismiss, the complaint must "provide enough facts to state a claim that is plausible on its face." Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In effect, a court "will accept the pleader's description of what happened to him or her along with any conclusions that can reasonably be drawn therefrom." 5B Wright & Miller, *supra*, § 1357. However, a court need not accept conclusory allegations encompassing the legal effect of the pleaded facts. Randall v.

9

United States, 30 F.3d 518, 522 (4th Cir. 1994) ("[W]e are not so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint."). Twombly and Iqbal also made clear that the analytical approach for evaluating Rule 12(b)(6) motions to dismiss requires courts to reject conclusory allegations that amount to mere "formulaic recitation of the elements" of a claim, Iqbal, 556 U.S. at 680-81, and to conduct a "context-specific" analysis to determine whether the "well-pleaded factual allegations" "plausibly suggest an entitlement to relief." Id. at 679, 681.

In the employment discrimination context, a complaint need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth . . . in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 (2002). The McDonnell Douglas prima facie case "is an evidentiary standard, not a pleading requirement." Id. at 510. However, Swierkiewicz does not "remov[e] the burden of a plaintiff to allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Nor is a complaint in an employment discrimination case immune from the requirements of Twombly and Iqbal. These principles guide the assessment of the motions to dismiss Chamblee's Complaint.

10

### (b)  Count I: Disparate Impact

Title VII "makes it unlawful to 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Barnett v. Technology Int'l, Inc., 1 F. Supp. 2d 572, 576 (E.D. Va. 1998) (quoting 42 U.S.C. § 2000e-2(a)). Title VII prohibits both "overt discrimination," known as "disparate treatment discrimination," and "practices that are fair in form, but discriminatory in operation," known as "disparate impact discrimination." Id. (internal quotation marks omitted) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971)).

Claims based on the disparate impact theory do not need to allege discriminatory intent, but only "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Id. (internal quotation marks omitted) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)). To state a legally cognizable disparate impact claim, a plaintiff must identify the specific employment practice being challenged and that the policy excluded the plaintiff, as a member of a protected group, from specified benefits of employment." Id. at

11

579 (citing Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 994 (1988)).

First, however, a plaintiff must exhaust his or her administrative remedies by filing a charge of discrimination with the EEOC before filing suit under Title VII. 29 U.S.C. § 2000e-5(f)(1); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). The failure "to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones, 551 F.3d at 300; see Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 376 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction."). The scope of the civil action is limited by the "scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Bryant v. Bell Atlantic Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002); see Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005) ("The exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible."). Because lay persons generally complete the EEOC charges, courts construe them liberally. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013).

12

However, a court may not "read into administrative charges allegations they do not contain." Id.

Chamblee's EEOC charges allege that the Defendants discriminated against him based on his race and sex, and specifically that the Defendants denied him promotion opportunities because of his race and sex. (ODS' Motion to Dismiss, Ex. A & B.)[1] His EEOC charges also state that defendant Mr. Gray told him that "it is not the company's practice to advertise open positions." Id. While Chamblee's EEOC charges mention a practice or policy, the actual EEOC charges, even read liberally, do not encompass a claim for disparate impact. See Cross v. Suffolk Cnty. Sch. Bd., 2011 WL 2838180, *8 (E.D. Va. 2011); see also Bridgeforth v. Potter, 2011 WL 3102422, *8 (W.D. Va. 2011) (noting that the plaintiff's EEOC charge was "specific to one incident of alleged discrimination" and that a "reasonable investigation following the allegations in his EEOC complaint" would not discover a disparate impact).

---

[1] Generally, when deciding whether to grant a 12(b)(6) motion, courts primarily consider the allegations in the complaint. Wright & Miller, supra § 1357. However, courts may consider evidence incorporated by reference or integral to the claim. (Complaint, at ¶¶ 21, 71-75, 77); see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) ("Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, we have held that when a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenges its authenticity.") (internal quotation marks omitted).

13

Chamblee's EEOC charges focuses on the treatment that he received at the hands of ODS; it does not include any allegations that the policies or practices fell more harshly on one group of persons or another. See Chacko v. Patuxent Inst., 429 F.3d 505, 508 (4th Cir. 2005) (stating than an "allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of conduct"). As stated in Cross, "at a minimum" a plaintiff's EEOC charges must identify a "policy that has a disparate impact on a protected *group* . . . and/or facts supporting a reasonable inference of one." Cross, 2011 WL 2838180, at *8. As there are no facts in the charge that suggest the practice of not posting open positions disparately impacted a protected group, the "foundation . . . is too vague to support a claim" for disparate impact, the disparate impact claim is procedurally barred. See Chacko, 429 F.3d at 509.

Because Chamblee did not allege that an ODS practice or policy had a disparate impact in his EEOC charge, he failed to exhaust his administrative remedies as to a disparate impact claim. As a result, the Court does not have jurisdiction over Count I.

14

**(c)   Counts  II  and  IV:  Retaliation  -  Race  and  Gender Discrimination**

The  three  elements  of  a  prima  facie  Title  VII  retaliation claim  are:  (1)  engagement  in  a  protected  activity;  (2)  an adverse  employment  action;  and  (3)  a  causal  link  between  the protected  activity  and  the  employment  action.  Coleman v. Md. Ct. of  Appeals,  626  F.3d  187,  190  (4th  Cir.  2010).  The  Fourth Circuit  has  held  that  employers  may  be  held  vicariously  liable for  the  discriminatory  acts  of  their  "decisionmakers."  See Balas v.  Huntington  Ingalls  Indus.,  Inc.,  711  F.3d  401,  410-11  (4th Cir.  2013)  (internal  quotation  marks  omitted)  (quoting  Hill v. Lockheed  Martin  Logistics  Mgmt.,  Inc.,  354  F.3d  277,  290  (4th Cir.  2004)).

### (i)   Protected Activity

The  Complaint  clearly  alleges  that  Chamblee  engaged  in protected  activity.  See  42  U.S.C.  §  2000e-3(a);  Laughlin v. Metro.  Washington  Airports  Auth.,  149  F.3d  253,  259  (4th  Cir. 1998)  (placing  protected  activities  into  two  categories: participation  and  opposition).  First,  on  or  about  March  28, 2011,  Chamblee  complained  to  Gray  that  ODS  had  not  given  him  the opportunity  to  apply  for  a  promotion  because  of  his  race  and gender.  (Complaint,  at  ¶¶  18-19.)  After  Gray  and  Chamblee  met  on March  31,  2011  to  discuss  the  complaint,  Chamblee  filed  a  formal complaint  with  the  EEOC  on  April  6,  2011.  (Complaint,  at  ¶  27.)

15

Chamblee also filed a formal complaint alleging retaliation on June 8, 2011. (Complaint, at ¶ 27.)

### (ii) Materially Adverse Employment Action

The Complaint also alleges that Chamblee suffered a "materially adverse" employment action. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (holding that a "reasonable employee would have found the [adverse employment action] materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'") (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). A reassignment or change in duties "is not automatically actionable." Id. at 71. Rather, the determination demands an inquiry into the circumstances of the case and whether the action would be materially adverse to a reasonable person. Id.

First, ODS allegedly retaliated by terminating Chamblee's employment on May 24, 2011 after his opposition to the unannounced job postings and his April 6th EEOC complaint. Second, the Complaint alleges that when ODS rehired Chamblee, it retaliated by assigning him to a new site forty-seven miles away from his original site, took away his supervisory responsibilities, and classified him as a "new hire." (Complaint, ¶¶ 28, 35.) The Complaint has alleged sufficient

16

facts to support a reasonable inference that the challenged employment actions were materially adverse.

### (iii)   Causation

A plaintiff must show that his or her protected activity constituted the "but-for" cause of the materially adverse employment action by the employer. Univ. Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). Although it is far from conclusive, temporal proximity between the protected activity and the adverse action often suffices for a "prima facie case of causality." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)). Significantly, the decisionmaker's knowledge of the protected activity is "essential to a retaliation claim." Francisco v. Verizon S. Inc., 756 F. Supp. 2d 705, 725-26 (E.D. Va. 2010) (internal quotation marks omitted) (quoting Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)). Thus, the Complaint must allege facts making it plausible to accept that the person taking retaliatory action "possessed such authority to be viewed as one principally responsible for the [retaliatory] decision." Bates v. Huntington Ingalls Indus., Inc., 771 F.3d 401, 410-11 (4th Cir. 2013) (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 291 (4th Cir. 2004).

The Complaint does not allege that Gray or Ellis knew of the April 6th EEOC complaint before ODS discharged Chamblee on May 24, 2011. While the Complaint does allege that Gray knew of Chamblee's informal complaints and discussed those complaints with Chamblee on March 31, 2011—well before May 24th—it does not allege that Gray made the decision to terminate Chamblee's employment, or that he had authority to do so. Rather, the Complaint only alleges that Ellis "terminated [Chamblee] on the spot." (Complaint, at ¶ 24.)

Thus, as to the termination of Chamblee's employment, the Complaint characterizes Ellis as the decisionmaker. Yet, the Complaint does not allege that Ellis knew of the formal EEOC complaint, the informal complaints, or that Chamblee ever came to Ellis with complaints about the tensions between himself and Ferrell. Nor, does the Complaint allege that Ellis made the decision to terminate Chamblee's employment pursuant to Gray's direction. And, it does not provide factual allegations that would permit a reasonable inference that Gray informed Ellis of Chamblee's informal complaints. Because the Complaint does not allege sufficient facts to support a reasonable inference that Ellis knew of the complaints, the Complaint fails to set forth a causal link between Chamblee's protected activity and his termination. Therefore, the Complaint fails to state a claim for retaliatory termination.

18

As to Chamblee's reassignment, the Complaint clearly alleges that Gray knew of the EEOC complaints (Complaint, at ¶ 28), and the Complaint alleges that Gray was the relevant decisionmaker. Id. Thus, the Complaint adequately states a claim for retaliatory reassignment, and the Motion to Dismiss will be denied as to Counts II and IV.

### (d) Counts V, VI, VII, VIII, IX and X—Contract, Negligence, and Bowman Action

Chamblee has withdrawn Counts V through VIII. (Plaintiffs' Opposition to Defendants' Motions to Dismiss, at 16.) In addition, Chamblee did not respond to the arguments made by any of the defendants with regards to Counts IX and X. As a result, Chamblee abandoned these claims. See Coleman v. Johnson, ___ F. Supp. 2d ___, 2014 WL 116150, *4 (D.D.C. 2014) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); Intercarrier Commc'n, LLC v. Kik Interactive, Inc., 2013 WL 4061259, *3 (E.D. Va. 2013); Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010); see also Roberts v. Holder, 2009 WL 691212, *5 (E.D. Va. 2009).

Therefore, Counts V, VI, VII, VIII, IX, and X will be dismissed. The Court denies the plaintiff's request to amend the Complaint. Because Count I is clearly barred on jurisdictional

19

grounds, it would be futile to amend it. As to Counts IX and X, the plaintiff abandoned these claims when he did not respond to the arguments made by the defendants. Permitting the plaintiff to amend these counts after abandoning them would allow an undue delay in responding to the defendants' arguments.

## CONCLUSION

For the reasons set forth above, DEFENDANT OLD DOMINION SECURITY COMPANY, L.L.C. AND CHAD ELLIS' MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AS UNTIMELY (Docket No. 12) and DEFENDANT TROY GRAY'S MOTION TO STRIKE PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AS UNTIMELY (Docket No. 14) will be denied, PLAINTIFF'S MOTION TO ENLARGE TIME TO RESPOND TO DEFENDANTS' OLD DOMINION SECURITY COMPANY L.L.C.'S, ELLIS & GRAY'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT (Docket No. 18) will be granted, DEFENDANT OLD DOMINION SECURITY COMPANY, L.L.C.'S MOTION TO DISMISS COMPLAINT FILED BY DARRELL D. CHAMBLEE (Docket No. 3) will be granted with respect to Counts I, V, VI, VII, VIII, IX, and X and will be denied with respect to Counts II and IV, DEFENDANT CHAD ELLIS' MOTION TO DISMISS COMPLAINT FILED BY DARRELL D. CHAMBLEE (Docket No. 6) will be granted, DEFENDANT TROY GRAY'S MOTION TO DISMISS THE COMPLAINT

FILED BY DARRELL D. CHAMBLEE (Docket No. 8) will be granted, and the plaintiff's request to amend the Complaint will be denied.

It is so ORDERED.

/s/   REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 16, 2014